UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MARC ANTHONY COLON,<br><br>       Petitioner,<br> v.<br><br>NETHANJAH BREITENBACH,[1] *et al.*,<br><br>       Respondents. | Case No. 3:18-cv-00490-MMD-CLB<br><br>ORDER |

**I. SUMMARY**

Petitioner Marc Anthony Colon was sentenced in Nevada state court to, *inter alia*, life without the possibility of parole after being found guilty of child abuse resulting in substantial bodily harm and first-degree murder. (ECF No. 68-11.) This matter is before this Court for adjudication of the merits of Colon's counseled second amended petition for writ of habeas corpus under 28 U.S.C. § 2254, which alleges that his trial counsel failed to adequately conduct pre-trial investigations and preparations concerning an alibi witness. (ECF No. 60 ("Petition").) For the reasons discussed below, the Court denies the Petition and denies a certificate of appealability.

///

///

///

///

---

[1]The state corrections department's inmate locator page states that Colon is incarcerated at Northern Nevada Correctional Center. Nethanjah Breitenbach is the current warden for that facility. At the end of this order, this Court directs the clerk to substitute Nethanjah Breitenbach as a respondent for Respondent R. Baker. *See* Fed. R. Civ. P. 25(d).

## II.   BACKGROUND

### A.   Factual background[2]

Enrique Reyes testified that on the morning of January 12, 2006, while looking in a dumpster at an apartment complex in Las Vegas, Nevada, he found the body of a little girl. (ECF No. 67-24 at 134-37.) Dr. Gary Telgenhoff, a forensic pathologist with the Clark County Coroner's Office, performed an autopsy of the girl, who was found to be three years old, and determined that she was malnourished and dehydrated. (ECF No. 67-26 at 21, 25, 32.) According to Dr. Telgenhoff, the girl's eyes were sunken within the sockets, she was gaunt, and "[s]he appeared to lack soft tissue in her extremities." (*Id.* at 32.) Dr. Telgenhoff reported that the girl had (1) "bitten or torn" fingers, (2) "many, many different bruises on [her] entire body, in particular, the back, the chest or torso area, the buttocks and to a lesser extent the head," (3) marks indicating that she had been "very roughly grab[bed] under her arms," (4) "a large amount of blood in the abdominal cavity," (5) a torn "duodenum, which is the first part of the small intestine," (6) a tear in her pancreas, and (7) fractured ribs. (*Id.* at 40, 44, 46, 57, 60.) A torn duodenum is caused by something "enter[ing] the abdomen and creat[ing] a substantial amount of force" and, unless successfully treated, would cause a person to die within 24 hours. (*Id.* at 58, 64.) Dr. Telgenhoff determined the girl's cause of death to be blunt-force trauma to the torso. (*Id.* at 67.)

Law enforcement got "[a] huge number" of tips regarding the possible identity of the girl, but none of those tips panned out. (ECF No. 67-26 at 133, 144.) Eventually, on February 22, 2006, the mother of Colon's girlfriend and co-defendant, Gladys Perez, contacted law enforcement in California about her missing granddaughter, C.F. (ECF No. 67-31 at 189.) After law enforcement in California contacted law enforcement in Las Vegas, Perez's mother was able to confirm that the girl was C.F. (*Id.* at 189, 191.)

---

[2]The Court makes no credibility or other factual findings regarding the truth or falsity of this trial evidence before the state court. The Court's summary is merely a backdrop to its consideration of the issue presented in the Petition.

2

In January 2006, Colon and Perez went on a trip from California to Las Vegas with Colon's two daughters, M.C. and M.C., and Perez's two daughters, C.F. and L.F. (ECF No. 67-36 at 31-32.) On January 8, 2006, Colon, Perez, and the four girls stayed at the Stratosphere. (ECF No. 67-39 at 62.) On January 9, 2006, Colon, Perez, and the four girls checked into the Bargain Motel and stayed for three nights. (ECF No. 67-30 at 6, 8, 10.) L.F., who was nine years old at the time of the trial in September 2008, testified that while they were at the Bargain Motel, C.F. was sick and vomited. (ECF No. 67-36 at 76, 83.) During the night, L.F. heard Colon and her mother arguing about C.F., and the next morning when L.F. woke up, C.F. was gone. (*Id.* at 86, 94-95.) Similarly, M.C., Colon's older daughter who was twelve years old at the time of the trial, testified that while staying at the Bargain Motel, C.F. "started coughing, and then like a few minutes later she started throwing up." (*Id.* at 122, 130.) According to M.C., C.F. "thew up many times." (*Id.* at 132.) The next morning, C.F. was gone, and Colon and Perez told M.C. that they had "dumped [C.F.] off at her grandma's house." (*Id.* at 136.) M.C., Colon's younger daughter who was ten years old at the time of the trial, testified that Colon hit C.F. once on her back "in the middle on the side." (*Id.* at 189, 213.) M.C. was also told that C.F. was with her grandma. (*Id.* at 199.)

Colon, Perez, M.C., M.C., and L.F. then drove to Oregon and eventually took a train to Minnesota to stay with Colon's uncle. (ECF No. 67-36 at 47, 54.) After some time, Perez and L.F. left Minnesota to go back to California. (*Id.* at 90.) Law enforcement interviewed M.C. and M.C. at Colon's uncle's house in the presence of Colon's uncle's daughter, A.R. (ECF No. 67-37 at 49.) During her law enforcement interview, M.C., the older sister, stated that Colon "made the bruise on [C.F.]'s back" by punching her. (ECF No. 67-38 at 97-98.) M.C. explained that C.F. started vomiting after Colon hit her, and Colon said "that [C.F.] made too much drama in their lives." (*Id.* at 97.) According to M.C., Colon had his hand in a fist and "was very angry."[3] (*Id.* at 98.) And during her law

---

[3]M.C.'s trial testimony varied from her law enforcement interview statements, and she testified at the trial that the police told her to lie and say that Colon had hit C.F. (ECF

3

enforcement interview, M.C., the younger sister, told law enforcement that Colon hit C.F. (*Id.* at 102.) Law enforcement also interviewed L.F., and she said that Colon "socked" C.F. (*Id.* at 132.)

Law enforcement interviewed Colon, and when asked if he was responsible for C.F.'s death, Colon replied, "that's not my kid." (ECF No. 67-38 at 114.) Colon was asked who put C.F. in the dumpster, and he responded, "I never left the apartment." (*Id.*) Colon was also asked if he ever hit any kids, and he stated, "I never hit *my* kids." (*Id.* at 116 (emphasis added).) Colon explained that C.F. was sick the night of January 11 into January 12, 2006, and he and Perez decided to take her to the hospital. (*Id.* at 117-118.) Perez got C.F. dressed, and it was then that they noticed that C.F. was not breathing. (*Id.* at 118.) Colon told law enforcement that C.F.'s "death was a result of domestic violence." (*Id.* at 120.) In a letter written to Perez after his arrest, Colon stated "'20 minutes, Gladys. All that shit happened in 20 minutes and nobody heard nothing. None of the girls were up.'" (*Id.* at 141.)

### B. Procedural background

The jury found Colon guilty of child abuse resulting in substantial bodily harm and first-degree murder committed during the perpetration or attempted perpetration of child abuse. (ECF No. 67-47.) The jury sentenced Colon to life in prison without the possibility of parole. (ECF No. 68-1.) Colon appealed, and the Nevada Supreme Court affirmed Colon's judgment of conviction on September 29, 2011. (ECF No. 68-41.) Colon moved for rehearing and for en banc reconsideration, but the Nevada Supreme Court denied both requests. (ECF Nos. 68-45, 68-49.) Remittitur issued on March 20, 2012. (ECF No. 68-50.)

Colon petitioned for state postconviction relief. (ECF Nos. 69-1, 69-13.) The state court denied Colon relief without an evidentiary hearing on April 19, 2016. (ECF No. 69-

---

No. 67-36 at 149-150.) Notably, Colon's sister, who flew with M.C. and M.C. back to California from Minnesota, testified that once M.C. learned "what could potentially happen to her father, her story changed." (ECF No. 67-37 at 96.)

21.) Colon appealed, and the Nevada Court of Appeals affirmed on September 13, 2017. (ECF No. 69-46.) Remittitur issued on October 10, 2017. (ECF No. 69-47.)

Colon commenced this federal habeas corpus action on or about September 4, 2018. (ECF No. 1.) This Court appointed counsel for Colon, and counsel filed an amended petition on July 15, 2019. (ECF Nos. 9, 15.) Colon's counsel withdrew, and this Court appointed Colon new counsel on May 12, 2022. (ECF No. 38, 44, 46.) Colon's new counsel filed this Petition on June 5, 2023. (ECF No. 60.) Respondents answered the Petition on October 2, 2023, and Colon replied on October 30, 2023. (ECF Nos. 73, 74.)

### III.   GOVERNING STANDARD OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to

5

the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

## IV.   DISCUSSION

In his sole ground for relief, Colon argues that his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments were violated by his trial counsel's failure to adequately conduct pre-trial investigations and preparations concerning his alibi defense. (ECF No. 60 at 13.) Specifically, Colon alleges that his counsel was deficient in: (1) failing to prepare his alibi witness for cross-examination; (2) offering an alibi defense during opening statements that counsel failed to deliver during trial; and (3) failing to interview and present other alibi witnesses. (*Id.*)

### A.   Background information

Before the trial, on July 18, 2006, two defense investigators interviewed Alejandra Carbajal, Colon's ex-girlfriend who lived in Las Vegas and had custody of their son. (ECF No. 69-13 at 163.) During that interview, Carbajal stated Colon "had showed up to [her] Nana's house to visit [her] and Josiah, his son" in January of 2006. (*Id.* at 170.) Carbajal

explained that this two-hour visit took place at "night time" and the following people were present: Nick Platt, Aaron Buck, Nicki Buck, and Anthony Buck. (*Id.* at 164-65.) Colon came back the following day at "nighttime" for 3 to 4 hours, and the same people were present. (*Id.* at 165.)

Before the trial, Colon's counsel filed a "reservation of right to claim alibi." (ECF No. 66-36.) During his opening statement at the trial, Colon's counsel summarized Colon's defense as follows: "the evidence will show you that it's actually [Perez] that killed her child when [Colon] was gone." (ECF No. 67-24 at 132.) In support of this defense, Colon's counsel told the jury that M.C. told the grand jury that: (1) Perez had hit C.F. while "her daddy had gone to get something to eat[;]" and (2) the person residing in the motel room above Colon and Perez at the Bargain Motel stated that she heard a woman mistreating children and "didn't hear a man." (*Id.* at 123-124.) Regarding Carbajal, Colon's counsel explained the following:

> [W]hat we know about Alex Carbajal is that the State went and interviewed her, recorded a statement. . . . And she describes how Mr. Colon was in fact over there, she thought between three and five hours.
> The prosecutors also interviewed some of her - - Ms. Carbajal's relatives who also saw Mr. Colon there. They sort of dispute the time period. Maybe it's an hour and a half, maybe it's two hours, or maybe, like Ms. Carbajal says, it's three to five hours. The point that you will see in this case is that on the 11th of January when this horrible event is happening[,] he's not there. He's gone. He's at Alex Carbajal's house. And none of the parties will dispute that Mr. Colon is gone for a period of time on the 11th.

(*Id.* at 129-130.)

Colon called Carbajal as a witness at the trial. (ECF No. 67-39 at 47.) Carbajal testified on direct examination that she saw Colon for "[a]bout two hours" in Las Vegas "on [her] uncle's birthday, around the 12th" of January 2006. (*Id.* at 48, 50, 51.) During Carbajal's cross-examination, the following colloquy occurred:

> Q. And you believed that he came over to your grandmother's house, he, meaning Marc Anthony Colon, came over on your uncle's birthday or around your uncle's birthday?
> A. Around. I don't think it was on his birthday because I would have remembered that, but around there, I think.
> Q. Could it have been the day after his birthday?
> A. No. It was before.

7

```
Q.    Was it the immediate day before?
A.    I'm not sure.
Q.    Could it have been two days before?
A.    I'm not sure.
Q.    Could it have been within a week of your uncle's birthday?
A.    It was close. It was close.
Q.    Within a day or two?
A.    I would say maybe.
Q.    You're not exactly sure precisely - -
A.    No.
Q.    - - whether it was - - you know for sure it was not on the 12th because you would remember that for sure?
A.    Right.
Q.    Could have been the 11th - -
A.    Yeah.
Q.    - - correct? Could it have been the 10th?
A.    I'm not sure.
Q.    Okay. You're not even sure if it was the 9th; is that fair to say?
A.    Yes.
Q.    Is it possible it was the 8th?
A.    I'm not sure.
```

(*Id.* at 55-57.) During cross-examination, Carbajal also testified that when she saw Colon, he told her that he was staying at the Stratosphere, indicating that she likely saw Colon on January 8, 2006. (*Id.* at 61.) Regarding the timing of Colon's visit, Carbajal stated that it was approximately from 6:00 p.m. until 8:00 p.m. (*Id.* at 63-64.)

During closing arguments, Colon's counsel made the following comments regarding Carbajal:

> Now I want to talk about Alex Carbajal because I told you in opening argument he's gone seeing Alex Carbajal. Well, put her on the witness stand. And what did she say? She said, I remember he was there because it was my uncle's birthday. It was like January 12th. And then she said, I remember he said he was going to Stratosphere. So [the prosecutor] showed that the Stratosphere was on the wrong day. It couldn't be the 11th, right? And she - - I would have to argue to you that she's probably just saying something. Okay. Do you know what? It proves something. It proves something. Do you know how easy it would be to, let's say, coach somebody to come in here and say, I remember my uncle's birthday was on the 12th of January and I remember it was distinctly - - it was the night before? How hard would that be? That's not what she said, is it?
>
> She came in. She told the truth. She came in, she tried to tell you the best she could. So can I now argue to you it was the 11th? I would contend, ladies and gentlemen, from the evidence that you should consider that it was the 11th? Can I show you that it was proved? No, because I think [the prosecutor] did an excellent job showing that it could be another day, specifically the date of Stratosphere.

8

(ECF No. 67-44 at 24-25.)

During Colon's state postconviction proceedings, a private investigator interviewed Carbajal. (ECF No. 69-13 at 229.) During that interview, Carbajal stated the following: (1) "at no time did Mr. Colon's attorney or investigator give her a copy of any statements that she had made," (2) "at no time did Mr. Colon's attorney ask her to review any statements she had made," (3) "before she testified, Mr. Colon's attorney did not go over any questions that he was going to ask her," (4) "Mr. Colon's attorney did not ever tell her that the exact date of Mr. Colon's visit with her was crucial to his case," and (5) "Mr. Colon's lawyer did not do anything to prepare her for her testimony or cross-examination." (*Id.* at 229-230.)

### B. Legal standard for ineffective assistance of counsel

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate: (1) that the attorney's "representation fell below an objective standard of reasonableness[;]" and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable

is especially difficult. *See Richter*, 562 U.S. at 104-05. In *Richter*, the United States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) ("When a federal court reviews a state court's Strickland determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential.") (internal quotation marks omitted). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

**C.     State court determination**

In affirming the denial of his state habeas petition, the Nevada Court of Appeals held:

> Colon argues his trial counsel failed to adequately investigate Colon's alibi witness or prepare the witness to testify at trial. Colon further argues counsel should have investigated additional witnesses to support his alibi. Colon fails to demonstrate the district court erred by denying these claims.
> During the trial, Colon's alibi witness testified Colon attended a party during his visit to Las Vegas, but was unsure of the exact date. The alibi witness acknowledged she had previously stated the party was on the same day the victim died, but when confronted with further information regarding Colon's whereabouts during his time in Las Vegas, she recognized the party might not have been on the same day as the victim's death.
> The district court concluded counsel interviewed the witness prior to trial and questioned the alibi witness at length regarding her recollection of events. The district court found Colon failed to demonstrate counsel acted in an objectively unreasonable manner regarding the alibi witness. In addition, the district court found Colon did not demonstrate counsel would have discovered favorable information had counsel undertaken reasonably diligent investigation regarding the alibi witness or any additional potential alibi witnesses, given the overwhelming evidence of Colon's guilt produced at trial. *See Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004) (a petitioner claiming counsel did not conduct an adequate investigation must specify what a more thorough investigation would have uncovered). The record before this court supports the district court's conclusion in this regard.

> Moreover, we note the Nevada Supreme Court has already concluded the question of Colon's guilt in this matter was not close, *Colon v. State*, Docket No. 53019 (Order of Affirmance, September 29, 2011), and our review of the record demonstrates there was significant evidence of Colon's guilt produced at trial, particularly in light of the statements to the police made by Colon's daughters, asserting Colon hit the victim and was at the hotel room the night the victim died. Given the significant evidence of Colon's guilt, Colon fails to demonstrate a reasonable probability of a different outcome at trial had counsel further investigated alibi witnesses or prepared the alibi witness to testify at trial. Therefore, we conclude the district court did not err in denying these claims.

(ECF No. 69-46 at 4-5.)

### D. Analysis

As the Nevada Court of Appeals reasonably concluded, Colon fails to demonstrate prejudice regarding his counsel's alleged deficiency. Indeed, due to the timeline of events, Colon's alibi defense was tenuous. And even if Colon's counsel had done a better job of presenting Colon's alibi defense—by either: (1) further supporting the defense with testimony from other witnesses regarding Colon's visit with Carbajal on January 11, 2006; or (2) preventing the damaging evidence produced during cross-examination that Colon's visit with Carbajal was actually on January 8, 2006—Colon's alibi defense would still have been weak. *See Murtishaw v. Woodford*, 255 F.3d 926, 940 (9th Cir. 2001) ("[I]n order to determine whether counsel's errors prejudiced the outcome of the trial, it is essential to compare the evidence that actually was presented to the jury with the evidence that might have been presented had counsel acted differently.") (internal quotation marks omitted); *Hernandez v. Chappell*, 923 F.3d 544, 554 (9th Cir. 2019) ("The strength of the evidence of Hernandez's intent to rape and kill contrasts sharply with the relatively weak evidence that might have been presented had counsel acted differently.") (internal quotation marks omitted).

In a letter Colon wrote to Perez after his arrest, he indicated that the fatal abuse of C.F. happened at night when "[n]one of the girls were up." (ECF No. 67-38 at 141.) There was then evidence that Perez went to a Walgreens on January 12, 2006, at 3:45 a.m. and bought "Pedialyte and baby medicine for a sick baby." (ECF No. 67-37 at 4, 8, 9.)

C.F. was found in the dumpster less than four hours later at 7:30 a.m. (ECF No. 67-24 at 149.) Dr. Telgenhoff testified that "most likely timing" regarding "the life expectancy of somebody with a severed duodenum" is "a number of hours." (ECF No. 67-26 at 64.) Based on this aggregate evidence, C.F.'s duodenum was likely severed sometime during the late hours of January 11 or the early hours of January 12, 2006. Consequently, even if Colon's visit with Carbajal occurred on January 11, 2006, as he asserted, it appears from the record that the visit took place before the fatal abuse of C.F. In fact, Carbajal testified that Colon's visit took place from approximately 6:00 p.m. until 8:00 p.m. (ECF No. 67-39 at 63-64.) As such, even if his counsel had done a more proficient job of showing that Colon was away from the motel room on the evening of January 11, 2006, such a showing would not prove that Colon could not have caused C.F.'s fatal injuries.

Moreover, as the Nevada Court of Appeals reasonably concluded, there was significant evidence of Colon's guilt produced at the trial. Law enforcement officers testified that M.C., M.C., and L.F. all stated during their law enforcement interviews that Colon had hit C.F. (*See* ECF No. 67-37 at 97-98, 102, 132.) Moreover, during his law enforcement interview, Colon did not outright deny causing C.F.'s death and admitted to being present in the motel room at the time of the fatal abuse, explaining that he "never left the apartment" and C.F.'s "death was a result of domestic violence." (ECF No. 67-38 at 114, 120.)

Accordingly, the Nevada Court of Appeals' determination that Colon failed to demonstrate a reasonable probability of a different outcome at trial had his counsel further investigated alibi witnesses or prepared Carbajal to testify at trial constituted an objectively reasonable application of *Strickland*'s prejudice prong and was not based on an unreasonable determination of the facts. Colon is not entitled to federal habeas relief.

## V.     CERTIFICATE OF APPEALABILITY

This is a final order adverse to Colon. Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability ("COA"). This Court has *sua sponte* evaluated the claims within the petition for suitability for the

issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Applying this standard, this Court finds that a certificate of appealability is unwarranted.[4]

## VI. CONCLUSION

It is therefore ordered that the second amended petition for a writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 60) is denied.

It is further ordered that a certificate of appealability is denied.

The Clerk of Court is directed to: (1) substitute Nethanjah Breitenbach for Respondent R. Baker; (2) enter judgment accordingly; and (3) close this case.

DATED THIS 16th Day of November 2023.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] Colon requests that this Court conduct an evidentiary hearing. (ECF No. 60 at 23.) Colon fails to demonstrate that he is entitled to an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2). Further, this Court has already determined that Colon is not entitled to relief, and neither further factual development nor any evidence that may be proffered at an evidentiary hearing would affect this Court's reasons for denying relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Colon's request for an evidentiary hearing is denied.

13